1

2

3

4

5

6

7

8       UNITED STATES DISTRICT COURT
        WESTERN DISTRICT OF WASHINGTON
9                   AT TACOMA

10

11   ANDREW CAINION,                          CASE NO. C13-5768 RJB

                        Plaintiff,            ORDER ON DEFENDANTS'
12                                            MOTION FOR SUMMARY
             v.                               JUDGMENT
13
     CITY OF BAINBRIDGE ISLAND,
14   STEVE BONKOWSKI, KATHARINE
     COOK,
15
                        Defendants.
16

17          This matter comes before the court on Defendants' Motion for Summary Judgment.  Dkt.

18   16.  The court has considered the relevant documents and the remainder of the file herein.

19                              PROCEDURAL HISTORY

20          On August 30, 2013, plaintiff filed a complaint against the City of Bainbridge Island;

21   Steve Bonkowski, Mayor of the City of Bainbridge Island; and Katharine Cook, Director of the

22   City of Bainbridge Island Department of Planning and Community Development.  Dkt. 1. The

23   complaint alleges that defendants discriminated against plaintiff based upon his race, in violation

24   of 42 U.S.C. § 1983.

ORDER ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT- 1

1    Plaintiff was initially represented by counsel, who withdrew on December 4, 2013.  Since

2    that time, plaintiff has been proceeding *pro se*.

3                                        RELEVANT FACTS

4        *Plaintiff's Purchase of Property and Re-Zone.*  In 1989, plaintiff purchased a parcel of

5    property about a half-mile from Fletcher Bay, on the western side of Bainbridge Island.  When

6    plaintiff purchased the property in 1989, the City of Bainbridge Island had not yet incorporated; the

7    property was within Kitsap County jurisdiction. The Fletcher Bay property was zoned residential at

8    the time plaintiff bought it.

9        In the late 1980s, plaintiff sought a Planned Unit Development (PUD) and re-zone to

10   commercial.  Kitsap County granted the request and rezoned the property to commercial. Plaintiff, in

11   turn, agreed to complete the development within three years.  Around this time, contaminants were

12   discovered in the soil nearby, leading to litigation with the Department of Ecology and protracted

13   bankruptcy proceedings.   Plaintiff did not develop the Fletcher Bay property within three years.

14       In the interim, the City of Bainbridge Island incorporated and assumed jurisdiction in 1991.

15   Noting that Kitsap County's PUD regarding the Fletcher Bay property had lapsed, the City of

16   Bainbridge Island began the process to revoke the re-zone. A hearing was held in April of 1996

17   before a hearing examiner. Plaintiff was represented by counsel.  The hearing examiner revoked the

18   PUD and re-zone. Plaintiff did not appeal further or seek judicial review. Plaintiff's property reverted

19   to Open Space/Residential zoning.

20       *Comprehensive Plan and Neighborhood Service Zone.*  The Land Use Element of the City of

21   Bainbridge Island's Comprehensive Plan provides that Neighborhood Service Centers (NSCs) "serve

22   as small-scale commercial activity centers, which supplement that of the city center, but remain at

23   only a "slightly higher density to reinforce their role as small-scale, community centers." Dkt. 19, at

24   16-19.  NSCs are regulated "to provide a mix of neighborhood-scale residential, commercial, and

service activity that is compatible with the scale, character, and intensity of the surrounding residential neighborhood and that minimizes impacts…" BIMC 18.06.050(A).  The City of Bainbridge Island has three NSCs:  Island Center, Lynwood Center and Rolling Bay.  Plaintiff's residentially-zoned property is just outside the Island Center NSC zone.  Plaintiff has been working to incorporate his property into the Island Center NSC zone, which would permit commercial development.  Pursuant to the City of Bainbridge's Comprehensive Plan, changes to the boundaries of an NSC must go through a special planning process.  *See* Dkt. 19, at 14-20.  According to the declaration of Katharine Cook, Director of Planning and Community Development for the City of Bainbridge Island, this process is unique and recognizes the special characteristics of the area; and the process allows for collaboration, and even mediation, between the stakeholders (which include the public, city staff, planning commission, and elected officials). Dkt. 19, at 3. A special planning process may be requested, in writing, by at least one owner of property located within a special planning area. *See* Dkt. 19.

*Special Planning Area Process in 2002*.  In approximately 2002, a special planning area process was commenced for Island Center.  According to Ms. Cook, during that process, much of the surrounding neighborhood was strongly opposed to any expansion of the NSC, and individuals at the meeting were extremely hostile. Dkt. 19, at 3-4. The process was therefore discontinued.  *Id.*  Ms. Cook stated in her declaration that '[r]ace played no role in this whatsoever. The non-expansion of the Island Center NSC affected the rights of minorities and non-minorities alike." Dkt.  19, at 4. Plaintiff testified in his deposition that, since then, he has made no written requests for another special planning area process, although he stated that he "talked to [Ms. Cook] about it a couple times." Dkt. 17, at 27.

*2007 and 2010 Re-zone Efforts*. In 2007, plaintiff submitted a proposal to the city council to amend the Comprehensive Plan to change the boundaries of the Island Center NSC to include his

1  property.  Dkt. 19, at 4.  The City Council denied his request.  Plaintiff did not appeal to the

2  Washington Growth Management Board or Superior Court.

3        Plaintiff petitioned the City Council again in 2010, seeking effectively the same thing as

4  he had in 2007. Plaintiff testified in his deposition that three individuals opposed the request but

5  no one supported the application.  Dkt. 17, at 26.  The city planning commission supported the

6  application; the city staff did not support the application.  On August 25, 2010, the Bainbridge

7  Island City Council denied the request.  The City Council resolution stated as follows:

8        The primary basis for the denial of CPA 14567 by the City Council is that the application
      does not comply with decision criteria established by BIMC 18.117.050(C)(2), requiring
9      consistency with the overall intent of the Comprehensive Plan. Specifically, CPA14567
      does not comply with Land Use Policy NSC 1.3 and LU 1.9, which requires boundaries
10     to the Neighborhood Service Center be determined by a Special Planning Area Process to
      allow for comprehensive, neighborhood consideration of the land use change, which has
11     not occurred in this case.

12  *See* Dkt. 19, at 23-24.

13        Plaintiff has not had any further interactions with the City of Bainbridge Island or with

14  the staff.

15        Plaintiff appealed the August 25, 2010 Bainbridge Island City Council decision to the

16  Washington Growth Management Board, RCW 36.70A RCW, which affirmed the City's decision.

17  Dkt. 19, at 4.  Plaintiff did not seek judicial review of the decision of the Growth Management

18  Board.

19        The complaint alleges that, in 2013, a non-minority Rolling Bay resident applied for a rezone

20  from residential to commercial through an amendment to the Comprehensive Plan rather than the

21  special planning area process.  Dkt. 1, at 8.  The complaint alleges that City staff recommended

22  approval of the expansion of the commercially zoned area of the Rolling Bay NSC, and

23  recommended the same expansion for the Island Center NSC.   The complaint alleges that, at a

24  special meeting on June 27, 2013, the Planning Commission removed the Island Center NSC from

ORDER ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT- 4

1  the proposal; and recommended that staff look into how to allow the Rolling Bay proposal without

2  changing the special planning area process.  Dkt. 1, at 8-9.

3  MOTION FOR SUMMARY JUDGMENT

4  In their motion for summary judgment, defendants contend that (1) the lawsuit is time-

5  barred; (2) service has not been properly effectuated upon any of the defendants, and the defect

6  cannot be cured in light of the statute of limitations; (3)  Steve Bonkowski and Katharine Cook

7  are entitled to qualified immunity; and (4) the legislative decisions made by the City Council

8  involve application of existing law, without regard to race.  Dkt. 16.

9  On May 7, 2014, the court notified plaintiff of the requirements to respond to the motion

10  for summary judgment.  Dkt. 21.  Plaintiff did not respond to the motion.  The court has carefully

11  considered the record in this case and has construed the facts in favor of plaintiff.

12  LEGAL STANDARD

13  Summary judgment is proper only if the pleadings, the discovery and disclosure materials

14  on file, and any affidavits show that there is no genuine issue as to any material fact and that the

15  movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c). The moving party is

16  entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

17  showing on an essential element of a claim in the case on which the nonmoving party has the

18  burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue

19  of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find

20  for the non moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

21  (1986)(nonmoving party must present specific, significant probative evidence, not simply "some

22  metaphysical doubt.").  *See also* Fed.R.Civ.P. 56(e).  Conversely, a genuine dispute over a

23  material fact exists if there is sufficient evidence supporting the claimed factual dispute,

24  requiring a judge or jury to resolve the differing versions of the truth.  *Anderson v. Liberty*

1  *Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors*

2  *Association*, 809 F.2d 626, 630 (9th Cir. 1987).

3          The determination of the existence of a material fact is often a close question.  The court

4  must consider the substantive evidentiary burden that the nonmoving party must meet at trial –

5  e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at 254, *T.W. Elect.*

6  *Service Inc.*, 809 F.2d at 630.  The court must resolve any factual issues of controversy in favor

7  of the nonmoving party only when the facts specifically attested by that party contradict facts

8  specifically attested by the moving party.  The nonmoving party may not merely state that it will

9  discredit the moving party's evidence at trial, in the hope that evidence can be developed at trial

10  to support the claim.  *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra).*

11  Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not

12  be "presumed."  *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

13          In support of the motion for summary judgment, defendants may raise an issue, based

14  upon the pleadings, and the burden shifts to plaintiff to make a sufficient showing on all essential

15  elements of his claim, on which he has the burden of proof. *See Celotex Corp. v. Catrett*, 477

16  U.S. at 323-325 (burden of moving party in summary judgment motion may be met by pointing

17  out to the district court that there is an absence of evidence to support the nonmoving party's

18  case; once the moving party has met its initial burden, Rule 56(e) requires the nonmoving party

19  to go beyond the pleadings and identify facts which show a genuine issue for trial).

20          The nonmoving party must establish specific facts demonstrating the existence of

21  each element essential to that party's case in order to create a genuine issue for trial. *Kendall*

22

23

24

1    *v. Public Hospital District*, 118 Wn.2d 1, 8-9 (1991). In so doing, the nonmoving party must rely

2    exclusively on admissible evidence to establish such specific facts in opposition to the moving

3    party's motion. *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002).

4                                    <u>DISCUSSION</u>

5    **1.  Statute of Limitations**

6         Limitation periods in cases brought under 42 U.S.C.§1983 are determined by reference to

7    the applicable state's statute of limitations and the coordinate tolling rules.  *Rose v. Rinaldi*, 654

8    F.2d 546 (9th Cir. 1981); *Bianchi v. Bellingham Police Department*, 909 F.2d 1316 (1990).

9    RCW 4.16.080(2) provides a three year statute of limitations for personal injury to the person or

10   rights of another.  *See Antonius v. King Cnty.*, 153 Wn.2d 256, 261-62 (2004)("Discrimination

11   claims must be brought within three years under the general three-year statute of limitations for

12   personal injury actions….").

13        Federal law determines when a civil rights claim accrues. *Olsen v. Idaho State Bd. of Med.*,

14   363 F.3d 916, 926 (9th Cir. 2004) (quoting *Morales v. City of Los An*geles, 214 F.3d 1151, 1153–54

15   (9th Cir. 2000)).  A discrimination claim accrues when "the plaintiff knows or has reason to know of

16   the actual injury," irrespective of knowledge of "discrimination or discriminatory motive." *Lukovsky*

17   *v. City & Cnty. of San Francisco*, 535 F.3d 1044, 1051 (9th Cir. 2008) (collecting cases); *see also*

18   *Thelen v. Marc's Big Boy Corp.*, 64 F.3d 264, 267 (7th Cir.1995) (claim accrued upon termination,

19   even though plaintiff did not discover he was replaced by younger employee until later; action

20   accrues upon discovery of injury, not "unlawfulness").

21        A state's equitable exceptions to a statute of limitations are applicable to the extent they

22   are consistent with federal law.  *Board of Regents v. Tomanio,* 466 U.S. 478, 485-86 (1980).

23   Equitable tolling in Washington requires either bad faith, deception or false assurances of the

24

ORDER ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT- 7

1    defendants, and the exercise of diligence by the plaintiff. *Finkelstein v. Security Properties,* 76

2    Wn.App. 733 (1995), *citing Doucette v. Bethel Sch. Dist. No. 4*03, 117 Wn.2d 805 (1991).

3         The last interaction plaintiff had with the City of Bainbridge Island or its staff was

4    August 25, 2010, when his request to amend the Comprehensive Plan to change the boundaries of

5    the Island Center NSC to include his property was denied.  The claims accrued at least by that date.

6    Plaintiff did not file suit until August 30, 2014, more than three years after the claims accrued.  The

7    claims are therefore barred unless plaintiff can establish a basis for equitable tolling of the statute of

8    limitations.

9         The 2013 Planning Commission recommendations regarding the non minority Rolling Bay

10   applicant's request does not provide a basis for equitable tolling.  Construed very liberally, plaintiff

11   might claim that the Planning Commission's decision to delete Island Center from the Rolling Bay

12   applicant's request was based on racial discrimination, and that he became aware of the racial

13   discrimination at that time.  The record shows that, in 2010, the Planning Commission *supported*

14   plaintiff's request for an amendment to the Comprehensive Plan; the City Council disagreed and

15   denied plaintiff's request.  In 2013, the Rolling Bay applicant requested an expansion of the Rolling

16   Bay NSC; the Planning Commission decided against the staff's recommendation to include Island

17   Center in the request, and instructed staff to make a recommendation on how to allow the Rolling

18   Bay proposal without changing the special planning area process.   Plaintiff has come forward with

19   no evidence that the Planning Commission's decision to limit consideration to the Rolling Bay

20   applicant's request, and then to direct staff to pursue avenues of relief for the Rolling Bay proposal,

21   was based on racial discrimination.  The Planning Commission was not successful in 2010 in

22   recommending expansion of the Island Center NSC, in favor of plaintiff; in 2013, the Planning

23   Commission was apparently trying to find a way to approve an expansion of the NSC, this time for

24   Rolling Bay. The facts, even as alleged in the complaint, do not provide a basis for equitable tolling

ORDER ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT- 8

on the basis that plaintiff only discovered the alleged racial motivation in 2013.  Plaintiff has set forth no facts that would support a claim for equitable tolling of the statute of limitations.  This case is barred by the statute of limitations.

## 2. Service of Process

Defendants contend that service has not been properly effectuated upon any of the defendants, and that the defect cannot be cured in light of the statute of limitations.  Dkt. 16, at 15.

Plaintiff has not filed a certificate of service, pursuant to Fed.R.Civ.P. 4(l), showing that defendants have been served in accord with Fed.R.Civ.P. 4(m), which provides as follows:

> If a defendant is not served within 120 days after the complaint is filed, the court–on motion or on its own after notice to the plaintiff–must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.  This subdivision (m) does not apply to service in a foreign country under Rule 4(f) or 4(j)(1).

More than 120 have passed since this case was filed on August 30, 2014.  Plaintiff has not shown good cause for failure to effectuate service within 120 days.  Further, this complaint is barred by the statue of limitations.  On the basis of lack of service alone, the court should dismiss the case.  However, in light of the statute of limitations issue, as discussed above, the dismissal should be with prejudice.

## 3. Qualified Immunity, Legislative Action and Motion to Strike

Defendants contend that Mr. Bonkowski and Ms. Cook are entitled to qualified immunity; that the land use decisions constitute legislative action that involves application of existing law without regard to race; and that certain inadmissible evidence should be stricken. Because this case should be dismissed as untimely, the court need not address these issues.

1    Accordingly, it is hereby **ORDERED** that Defendants' Motion for Summary Judgment

2  (Dkt. 16) is **GRANTED**.  This case is **DISMISSED WITH PREJUDICE**.

3    The Clerk is directed to send uncertified copies of this Order to all counsel of record and

4  to any party appearing *pro se* at said party's last known address.

5    Dated this 27th day of May, 2014.

6

7

ROBERT J. BRYAN
United States District Judge

ORDER ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT- 10